## FRY *a.* BENNETT.

*New York Superior Court; Special Term, December,* 1858.

*Again, General Term, June,* 1859.

ABANDONMENT OF ONE OF SEVERAL CAUSES OF ACTION.—AMEND-
MENT.—TRIAL.—NEW TRIAL.

In an action for libel, the complaint stated thirteen causes of action, to the sixth of
which the defendant demurred, and to the others he answered. The plaintiff hav-
ing recovered a verdict on the trial of the issues of fact, entered judgment. His
judgment-roll contained the whole complaint, and the demurrer to the sixth
cause of action, but this issue of law had never been brought to trial. The de-
fendant appealed from the judgment, and the plaintiff's points submitted on the
argument of the appeal, stated that the sixth cause of action was abandoned
on the trial. The plaintiff now moved that the judgment-roll be amended by
inserting *nunc pro tunc* an order that he take nothing by the sixth cause of
action.

*Held,* 1. That the court should from the facts deem the sixth cause of action
to have been abandoned.

2. That it was competent for the court to allow such an amendment upon
terms.

3. That the condition imposed should be that the plaintiff consent to allow an
amendment which the defendant asked to have made in the case settled on the
appeal, by the insertion of matters which occurred at the trial, and which
were of sufficient importance to entitle him to be heard on them on appeal.

---

Where there are both issues of fact and issues of law, and the former have been
tried first, it will be deemed that the court directed them so to be tried, if
nothing appears to show that objection was taken at the time of trial.

A verdict resting on conflicting evidence will not be disturbed.

Actual damage is not necessary to sustain a verdict for exemplary damages.

Where in an action for a number of libels, the question of malice arising upon
the evidence was fairly put to the jury, and favorably for the defendant, and
no actual damage was shown; and the verdict was for $6000,

*Held,* that the court would not deem the verdict excessive.

The limits to be set to the scope of remarks of counsel to the jury are in the
discretion of the judge who presides at the trial, and a verdict will not be
disturbed by the general term upon exception to his refusal to stop counsel in
a questionable line of remark, unless it clearly appears that the adverse party
was actually and unjustly prejudiced before the jury by such remarks.

I. *Special Term, December,* 1858.—Motion by plaintiff to amend judgment-roll; and motion by defendant to amend case on the appeal.

The plaintiff, on affidavits and other papers, and on notice to the defendant, moved " that the judgment-roll in this action, filed the 25th of April, 1857, be amended by inserting therein a *nolle prosequi,* or order that the plaintiff take nothing by the sixth cause of action specified in the complaint to which the defendant has demurred," and " that said order be entered *nunc pro tunc,* with like force and effect as if originally incorporated with said judgment-roll, when the same was filed and docketed."

The action was tried in May, 1856, before Chief-justice Oakley and a jury, and the plaintiff recovered a verdict for $6000. At the time of that trial, as the record disclosed, the defendant had demurred to the sixth libel, or cause of action, and such demurrer had not been argued or decided. The plaintiff now claimed that this libel was abandoned at the trial, that it was not read to the jury, and that no damages were assessed by reason of it.

On the 25th of April, 1857, judgment was entered on the verdict; and the judgment-roll, as filed, contained in the complaint inserted therein, the sixth libel or cause of action, and the defendant's demurrer thereto.

The defendant appealed from this judgment to the general term; the appeal was argued in December, 1857, and on the 3d of July, 1858, the judgment was affirmed; the judgment of affirmance was entered on the 18th of August, 1858; the decision of the appeal, at the request of the parties, was delayed until the question, whether the defendant had so appealed from an order denying a motion for a new trial, as to be entitled to have a hearing of such appeal, the court being given to understand that if the appeal from such order, should be held to.be regular, it would be submitted for decision to the judges who had heard the argument on the appeal from the judgment.

The appeal from the order was held to have been taken in time, but the counsel of both parties did not agree to submit it without further argument. The appeal from the order was

heard at the October term, 1858, and was at the time of this decision still undecided.

The defendant moved for an order that the case, on which the appeal from the order had been argued, be amended by inserting therein certain remarks made by the plaintiff's counsel in summing up the cause to the jury, against the objection of defendant's counsel, and after he had excepted to the decision of the court refusing to interfere and prevent remarks of the general nature and character objected to.

*B. F. Sherman*, for the plaintiff.

*D. D. Field* and *B. Galbraith*, for the defendant.—I. The sixth cause of action in the complaint has not been abandoned. Nothing has been done by the plaintiff which would preclude him now from proceeding with that claim. The points fail to make out abandonment; and the cases, both of them, show that the sixth libel was "out of the case, *for the present.*" No other communications have passed between the plaintiff's and the defendant's attorneys, or counsel, or the court.

II. The plaintiff of course cannot be allowed to state as a fact, what is not such. But then it may be said : the plaintiff ought now to be allowed to abandon this claim, if he sees fit. This we resist, for the following reasons : 1. It would deprive the defendant of the right, which he has now, to obtain a new trial. He has not misled the court; as the defendant, he is not a party to any attempt to withdraw the demurrers from the eye of the court. 2. It would give the plaintiff an unfair advantage. He has gone to trial, taking the chance of a verdict on the eleven libels. If he failed in them, he had still the chance of success secure upon the sixth. Succeeding on the trial, he seeks to withdraw from the demurrer. He should have made his election before the trial. 3. If the plaintiff had abandoned the sixth libel as untenable before the trial, the defendant might have read that in his defence, to show, from the admitted innocence of one of the series, how unlikely it was that the defendant had intended to injure the plaintiff. The defendant had a right, upon the questions of intent and of damages, to refer to other publications made about the same time.

III. If the plaintiff were permitted to amend, it should be

upon the terms of amending the case also in the particulars, in which it clearly has misstated the occurrences.

IV. The motion is too late. The rule is, that an amendment must be moved for as soon as the defect is discovered. That was last spring. No reason is given for not applying sooner.

V. A discontinuance under such circumstances after a demurrer, was not permitted under the old practice. (Baker *a.* Smith, 5 *Johns.*, 485 ; Baker *a.* Smith, 5 *Wend.*, 107 ; Lowe *a.* Humphrey, 9 *Ib.*, 501.)

BOSWORTH, Ch. J.—All the papers before me, tend to the conclusion that the sixth libel was abandoned at the trial, and was not then read to the jury; and that no damages were assessed by reason of it.

It is true, that the plaintiff has filed a judgment record containing it, and the demurrer to it put in by the defendant. Looking at the record alone, there remains an issue to be tried, and for aught that discloses, contingent damages may have been assessed by reason of that libel.

But it is equally true that the defendant appealed from such judgment, and has brought the appeal to argument. If the sixth cause of action was not regarded by him as having been in fact abandoned, he should, and naturally would, have moved to set aside the judgment-roll for irregularity. No judgment could be perfected until after all the issues in the action had been tried and decided.

The plaintiff's printed points submitted on the argument of the appeal from the judgment, state, *inter alia*, that " the libels are twelve in number (the sixth is out of the case, there being a demurrer *to it*, and it was abandoned at the trial)."

Points I. and II., of the points made by the defendant, on that appeal are, in effect, that the 1st, 2d, 3d, 4th, 5th, 7th, 8th, 9th, 10th, 11th, and 12th libels, or statements of causes of action, are severally defective and insufficient in this, that they do not state a cause of action. No notice is taken in such points of the sixth, nor was the court, at the trial, requested by the defendant to charge any thing in relation to it, while he did request instructions to be given as to each of the others.

I have no difficulty in reaching the conclusion that the sixth

libel was, at the trial, formally abandoned, and that this was understood by both parties.

Whether the plaintiff, inasmuch as he has made up and filed a judgment-roll containing that cause of action, and the demurrer to it, as being apparently subsisting proceedings in the action, must not abide by the consequences which would result from treating the record as presenting the actual condition of the issues that have been joined, unless the amendment he now seeks shall be granted, is not a question presented by this motion.

Leave to amend is asked. I have no doubt that it is competent for the court to grant it, on such terms as shall be just.

As a condition of granting it, he should be required to consent that the motion made by the defendant be granted to such extent, as to allow " the remarks" made by the plaintiff's counsel to the jury, a statement whereof is contained in the affidavit of James Thomas Roberts. He swears most explicitly to their accuracy, and that he, as short-hand reporter, reduced them to writing at the time they were spoken, and in the precise form they were made. No attempt is made to controvert the facts stated in his affidavit.

The judges who heard the appeal from the judgment, were of the opinion that it was the right of the defendant to require the court to prevent the counsel of the plaintiff from making such statements to the jury, as the *case* states he did make. The defendant excepted to the decision of the court, in refusing to then stop the counsel. The case as settled does not show that any thing objectionable was subsequently said by the plaintiff's counsel.

If they were of a character calculated to produce unjust results, substantial justice requires an amendment of the case. If they were not of that character, an insertion of them in the case cannot affect the result of the appeal from the order denying a motion for a new trial.

This is not the time nor the place to determine definitively that question. It is sufficient that they present questions of sufficient importance to be considered, and on which, it is just that the defendant should have an opportunity to be heard. I think it quite clear that they are of sufficient importance, considering the time, place, and circumstances under which they

were made, to require the plaintiff to consent to their insertion in the case as a condition to granting the motion made by him. His motion is granted on that condition. If such consent be not given, his motion is denied.

II. *General Term, June,* 1859.—Appeal from order denying motion for a new trial.

By THE COURT.*—SLOSSON, J.—This is an appeal from an order at special term denying a motion for a new trial.

The action was brought to recover damages for several libels published of and concerning the plaintiff, then the manager of an Italian Opera Company, in the New York Herald, of which the defendant is the editor, between the 3d day of November, 1848, and the 11th day of February, 1849.

The complaint alleged the publication of, and set forth twelve distinct libels. The verdict was for the plaintiff for $6000.

*First.* The defendant contends that it was irregular to have tried the issue of fact until the demurrer to the sixth cause of action, being the sixth of the alleged libels, had been disposed of. Under section 251 of the Code, the court may direct the issues of fact, where there are both issues of fact and law, to be tried first; and where a trial of such issues of fact has been had, and nothing appears to show that an objection was taken at the time of the trial, it will be intended that the court ordered those issues to be first tried. (2 *Sandf.*, 635.)

The jury do not appear to have assessed contingent damages in respect to the cause of action demurred to. Whatever inconvenience there may be, if there be any, as the entry of judgment should the plaintiff succeed on the demurrer, it was clearly not irregular to try the issues of fact first.

It was always optional with the plaintiff before the Code which he would try first, his issues of law or fact.

*Second.* The defendant contends that the verdict on the second, fifth, and seventh causes of action is not sustained by the evidence. In other words that he has fully proved the justification set up in his answer to those several libels.

---

* Present, SLOSSON, WOODRUFF, and PIERREPONT, JJ.

It is sufficient to say that there is conflicting evidence as to all or nearly all the matter thus set up by way of justification.

We see no reason whatever for disturbing the verdict on this ground.

*Third.* In the third place the defendant contends that the damages found by the jury were excessive : that no actual damages were proved, but that on the contrary the evidence tended to show that the effect of the publications was to fill the plaintiff's houses on the nights of the performances at the Opera House.

If by this proposition the defendant means that because no actual damage was proved, any damages beyond nominal are to be deemed excessive, we have only to say that it cannot be sustained—the reverse of the proposition is too well settled to be disputed. (Fry *a*. Bennett, 4 *Duer*, 247, and cases there cited.)

If the meaning of the proposition is, that conceding that exemplary damages may be given in a proper case, this is not a proper case, and that there is no evidence to warrant any such sum as that found by this verdict, either by way of compensation to the plaintiff, or as punitive and exemplary ; it is a sufficient answer to say, that that was a matter to be determined by the jury upon the evidence under the charge of the court.

The exceptions which were taken to the charge on the question of damages, have been already disposed of by this court, and we are to take the charge for the purposes of this appeal as in all respects correct.

The jury were instructed that the damages in the main rested in their sound discretion—that if they believed that the libels were not true, or had been published in respect to a man carrying on a particular kind of business, in regard to his conduct in that business, and had been a source of pain and mental suffering to the party libelled, that was a thing which they had a right to take into consideration—that if they found there was actual malice in the defendant, and that he acted upon the design to break down the plaintiff, that presented a case of great aggravation, and that taking all those things into view, if they found for the plaintiff, they would assess the damages, and say, in the exercise of a sound discretion, what they ought to be ; and on the question of malice, the judge distinctly told the jury that,

apart from the evidence of Strakosch, as to what the defendant said in the interview with that witness, in which he communicated to the defendant the fact that the plaintiff refused to have an interview with him, the defendant, there was nothing in the case which showed any deliberate design on the part of the defendant to injure the plaintiff; that if they believed that Strakosch meant to say that Bennett, when told by the witness that Fry refused to see him, used the language, " This will finish him," or " I will finish him," it presented a case of very aggravated nature, because it would show that Bennett from some resentment, as is alleged from the fact that Fry refused to call upon him, or have any intercourse with him, determined to destroy his business ; whereas if the words used were, " This is finished," it might mean an entirely different thing : and the judge left it to the jury to determine what the expression in fact was, which the defendant had used, stating that the witness throughout did not pretend to be specific and certain as to the language used, and that he finally said he thought the word used was " finished," and the judge told them that his own minutes showed that that was the word last used by that witness. This was stating to the jury the evidence of Strakosch even more favorably for the defendant than perhaps the language of that witness justified—he was a foreigner, and spoke the English language at that time but imperfectly. He swore that his impression always had been and then was (at the time of the trial), so far as he could recollect, that Mr. Bennett used the word " finish"—that he had thought a great deal of that for several years since he gave his testimony on the first trial, and that he could not recollect if the expression was " I will finish Mr. Fry," or " this will finish Mr. Fry," and that he thought it was the one or the other of those two expressions. On his cross-examination, when asked whether when English was spoken to him he could understand more than a few words, he replied, that he understood the meaning then, but did not understand all the words ; that he did not perfectly understand the words; that he got the meaning as much from the expression, face, and gesture (of the defendant), as 'from the words. To the explicit question, whether the word was " finish" or " finished," in the present or past participle, he answered, " I think it was finished ;" but when the question was again put to him : " Can

you tell the jury that these words were not used, 'Well, that is finished?'" he answered, "I do not remember—my impression is that he *meant it in another way.*"

The question of malice as arising on this evidence was fairly put to the jury, and very favorably for the defendant, and it is evident that the jury understood the witness to have said, or to have intended to be understood as saying, that the words which the defendant in fact used were, "This will finish Mr. Fry," or "I will finish him," or to that effect, showing a deliberate intent on the part of the defendant to ruin the plaintiff in his business.

It is, moreover, by no means improbable that the jury took into consideration the fact, that these libellous publications were continued for a period of over three months, and that, too, during the very time that the plaintiff was engaged in giving public performances with his opera company, and they might not unreasonably regard this, as confirmatory evidence that the defendant had in fact used the words, "This will finish him," or "I will finish him."

It cannot be denied that the evidence was susceptible of this construction, and if such was the conviction of the jury, they were justified, under the charge of the judge, in considering these libels as published with an actual malicious intent to injure the plaintiff, and consequently in giving exemplary damages; and we cannot say that the amount of the verdict is so large that we should be justified in holding that the jury were influenced in giving it by any other than an honest conviction, based upon the evidence, of the existence of this actual malicious intent.

The amount of the damages was wholly within their control; it was their province to determine how far the libels were malevolent, and calculated to wound the defendant's feelings, and injure him in public estimation. The fact that his business is not shown to have been injured, or that his houses were as well filled, or even better filled in consequence of the libels (if such a thing could be proved), would make no difference—the damages are in their nature in such cases punitive, as well as compensatory, and involve the principle of punishment for the sake of example, as well as satisfaction for the private wrong; and it is well settled that the court will not interfere, even if in its opinion the damages are too high, and the court would have

given less, unless, to use the language of the court in Coleman *a.* Southwick (9 *Johns.*, 51) : " They are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality, or corruption." (See also Southwick *a.* Stevens, 10 *Ib.*, 443.)

We cannot say that the amount of the verdict in the present case leads us to any such conclusion.

*Fourth.* It is further urged as a ground for a new trial, that the judge charged the jury, in effect, that it was uncertain whether the witness Strakosch used the word "finish" or "finished," and left them to determine this as a question of fact, "from recollection ;" whereas the word used by the witness was a fact which admitted no speculation or trusting to recollection, and if there was any doubt as to the word used, the witness might have been recalled.

This is a fallacy : although the judge used the language, "if the jury believe that Strakosch *meant to say*," &c., there is no doubt, in fact, as to what Strakosch did say ; his testimony left it doubtful whether the *defendant* used the word "finish" or "finished," and the judge left to the jury to determine "from recollection what the true character of the testimony was." "If," said the judge, "you are not satisfied that Strakosch *proves that fact* (that is, that the defendant used the words, ' This will finish him,' or ' I will finish him'), then, so far as I recollect the evidence, there is nothing in the case which shows any deliberate design on the part of Bennett to injure Fry." I think it impossible to say that the jury could have understood the judge as submitting to them any other question on the testimony of Strakosch, than that of the very words which the *defendant* in fact used, on this occasion.

*Finally.* The ground upon which the defendant's counsel most strenuously urged the granting of a new trial, was, that the plaintiff's counsel in the course of his summing up to the jury, after the court had been asked to interrupt him, and had refused to interfere, and the defendant's counsel had excepted, persisted without any warrant from the evidence in the case, in a strain of observation in respect to the character of the Herald, the defendant's paper, which was calculated grossly to influence the minds of the jury, and to prejudice the defendant's chance of a

fair verdict; and the defendant's counsel now contends, that although the court at general term, when this question was before it, held that it was not a cause for a new trial, it did so on the ground that the case did not then disclose that the plaintiff's counsel had, after the exception was taken, persisted in the objectionable course of remarks. Since the argument of the exceptions at general term, the case has by consent of parties been amended, so as to embrace the actual observations made by the plaintiff's counsel, after the interruption by the defendant's counsel, and the refusal of the court to interfere, and it is contended that those observations were of the same character as those which first led to the interference of the defendant's counsel, and that the present general term ought now, in justice to the defendant, to order a new trial.

It is undoubtedly true that the general term in deciding this question did say, that " if the case had disclosed affirmatively that the court refused to arrest that course of remarks, and that the plaintiff's counsel continued to pursue it after objection made and exception taken to the refusal of the court to interfere, we should feel it our duty to grant a new trial for that cause."

While we do not understand the general term as having by this language, or by any language used by it in disposing of this question, decided that the refusal of a judge to arrest counsel in a course of objectionable observation to the jury, is in itself a ground of legal exception, so as to entitle the party to a new trial as a matter of strict legal right, if the court shall be of opinion that the observations of counsel were such as ought to have led the judge to interfere; we are nevertheless of opinion, that the parties in an action are entitled to claim at the hands of the judge before whom the trial is had, that the case shall be submitted to the jury fairly upon the evidence, and that matters not justified by the evidence shall be excluded from their consideration. In the language of the general term, in passing on this very question, " it is equally indispensable to the orderly course of judicial proceedings, and an impartial administration of the laws, that counsel on either side should not be allowed to lose sight of the evidence and the issues, and indulge in denunciations of a party, based on the assumption of facts not proved, and which therefore should not be permitted

to disturb that calm deliberation which it is the duty of jurors to bestow, and which the parties have a right to expect and demand;" and we may add, that when the court can see that actual substantial injustice has been done, or that there is reasonable ground to apprehend that such injustice has been done by reason of a breach of this rule, which is a rule not only of good order in the conduct of judicial proceedings, but of protection and safety to the parties themselves, it would not only be proper, but might become the duty of the court to direct a new trial, not on the ground that the refusal of the judge below to interfere, where such is the case, is matter of exception, but by virtue of the inherent control which the court has over its own proceedings, and the general obligation resting upon every tribunal to see that the forms of its judicial proceeding are not perverted to the wrong and injury of suitors.

The whole subject must rest principally in the sound discretion and wisdom of the judge who presides at the trial, as it is impossible to prescribe a rule or draw a line of limitation which practically can be applied in all cases. How far in each particular instance counsel may go in commenting on the evidence, or in illustration of the facts or principles which they may deem important to the elucidation of truth, and not transcend the limits of strict professional duty, or overstep the boundary of the facts proved, is a question which must from its very necessity be mainly referred to the discretion of the judge before whom the trial is had; and a case proper for the interference of the appellate tribunal, must be one which, by its circumstances of aggravation, appeals to that inherent power in the court to prevent its proceedings from being made the instrument of injustice to which I have already adverted. It must be strictly an exceptional case, to be determined by its own peculiar features and merits.

As it is the right of the parties to be protected against the assumption of facts not proved, so it is their right through their counsel to draw from the evidence, and enforce upon the convictions of the jury, all legitimate inferences and conclusions; but how this shall be done, or within what limitations of comment or illustration, it is impossible for the court to prescribe. All the court can say is, that when it sees that a substantial wrong or injustice has been done to either party by an abuse of

this right, or can perceive that the verdict of the jury may be reasonably supposed to have been injuriously influenced by such an abuse, it will interfere to correct the evil.

In the present case we do not see clearly that such an injustice has been done, nor can we say from the mere amount of the verdict, or from any other circumstance appearing on the papers before us, that it is reasonably to be inferred that the jury were unduly influenced in giving their verdict, by the language and observations employed by the plaintiff's counsel on his final address to them, and which have given rise to this present discussion.

Moreover the judge expressly told the jury, that in determining the damages, they were to lay out of view any thing growing out of what had been said as to the character of the newspaper about which there was no evidence, and that they were to divest themselves of all feeling of that kind. After such a caution, delivered at the very close of the charge, we cannot assume from the mere amount of this verdict, that it was in any degree influenced by the language of counsel in the summing up. On the contrary, we must, I think, assume that the caution was heeded, and that the jury, as intelligent and conscientious men, rendered their verdict upon a strict consideration of the evidence only.

That they may have been thus influenced is indeed possible, and it is greatly to be regretted that any occasion should have been furnished for admitting even the possibility of such a thing; but it is not a clear case for our interference. On the contrary, we see no good reason to doubt that the verdict was awarded solely upon the conviction, that the evidence established that alternative of the case which the judge told the jury would present a case of a very aggravated nature as to malice.

Order of special term affirmed, and a new trial denied, with costs.